PROVIDENCE INSTITUTION FOR SAVINGS *vs.* CITY OF BOSTON.
PLINY JEWELL *vs.* CITY OF BOSTON.

The provisions of the St. of 1868, *c.* 349, for taxing national bank shares owned by nonresidents, are not unconstitutional; either as not being proportional or reasonable within the meaning of the Constitution of the Commonwealth, part 2, *c.* 1, § 1, art. 4; or as exceeding the limitation of the rate of assessment prescribed in the U. S. Sts. 1864, *c.* 106, § 41, and 1868, *c.* 7; or as being retrospective in their operation; or as denying to citizens of any state privileges and immunities of citizens of the several states.

TWO ACTIONS OF CONTRACT to recover the amounts of taxes assessed in 1868, under the St. of 1868, *c.* 349, by the assessors of Boston, on the plaintiffs as nonresident shareholders in the capital stock of the National Revere Bank, a banking association established at Boston under the U. S. St. of 1864, *c.* 106; submitted to the judgment of the court on statements of facts in which it was agreed that the plaintiffs, the first of whom was a corporation in Rhode Island, and the second a citizen of Connecticut, paid under protest the taxes so assessed. The St. of 1868, *c.* 349, was passed June 11, 1868, and in § 7 it was provided that it should take effect on its passage, and " apply to taxes assessed and collected for the present year, in the same manner and to the same effect as if it had been in force on the first day of May."

*B. F. Thomas,* for the plaintiffs. In the field of inquiry opened in these cases some landmarks have been established. It is settled that the shares of stockholders of the national banks are so far distinct property from that of the corporation as to constitute distinct subjects of taxation; *Van Allen* v. *Assessors,* 3 Wallace, 573; *Bradley* v. *People,* 4 Wallace, 459; *People* v. *Commissioners,* Ib. 244; that such shares may be assessed and taxed without deducting from their valuation the capital of the associations invested in bonds of the United States; *Cases above cited;* and that, the banks being agents of the national government in the execution of its powers and functions, the states have no power to tax their capital except under the permission of congress

*Bank of Commerce* v. *New York,* 2 Black, 620. *Bank Tax case* 2 Wallace, 200. *Weston* v. *Charleston,* 2 Pet. 449. *Mc Culloch* v. *Maryland,* 4 Wheat. 316. *Osborn* v. *United States Bank,* 9 Wheat. 738. This exemption, however, from taxation by the state or under its authority, has not been extended to the real estate of the bank, taxed in common with other real property in the state, nor to the interest which the citizens of the state may hold in the institution in common with other property of the same description throughout the state. The interest which citizens of the state may hold is, of course, the shares of its stock; and it was the usage of the states to tax the shares of resident stockholders of the United States Bank and its branches. *Mc Culloch* v. *Maryland,* 4 Wheat. 316, 437. *Utica* v. *Churchill,* 33 N. Y. 233–235. But in no case was it ever held that the shares of nonresident stockholders might be taxed in a state where the United States Bank or one of its branches was located; for they would not come within the reason of the exception. The shares are personal property, and as such follow the owner; and there would seem to be no inherent power in a state to tax rights which citizens of other states may hold in an institution not created by the authority of the state, nor subject to its jurisdiction, but deriving its powers and functions wholly from the United States. Whatever power, then, the Commonwealth of Massachusetts now possesses, to tax the shares of nonresident stockholders in national banks, comes from the permission and consent of congress, and is to be found in the U. S. Sts. of 1864, *c.* 106, § 41; 1868, *c.* 7. It is on these two acts of congress that the Massachusetts St. of 1868, *c.* 349, is founded.

On analyzing the St. of 1868, *c.* 349, so far as it concerns the assessment of the tax, two provisions are to be particularly noticed : first, that the stock to be taxed is to make no part of the valuation on which the amount to be raised is assessed, and by which the rate is to be fixed; and second, that the rate is not to exceed that at which other moneyed capital in the hands of " citizens of such city or town" is assessed; not of the state at arge, but of the city or town.

The first of these two provisions certainly presents an unusual

mode of taxation. Our usual, established mode is this. The sum to be raised is settled. A valuation is then made of each man's property, real and personal, which is the subject of taxation. The aggregate of these valuations makes the town or city valuation. The rate is but the result of arithmetic. The Constitution, part 2, *c.* 1, § 1, art. 4, authorizes the legislature to impose and levy "proportional and reasonable" taxes only. The St. of 1868, *c.* 349, is invalid, as imposing a tax which is not proportional. See Cooley Const. Limit. 405, 493, 503.

The statute provides for a tax, and not a duty or excise. It is entitled "An act concerning the taxing of bank shares." "Tax," and in no case "duty" or "excise," is the term used throughout it. The provisions for assessment and collection are appropriate to a tax, rather than to a duty or excise, and are assimilated to the existing provisions of law for the assessment and collection of taxes upon similar property. It cannot even be said of this statute, as of the St. of 1863, *c.* 236, that the purpose was so to frame it that it might be held valid either as a tax or an excise, whichever its true nature might be. See *Oliver* v. *Washington Mills*, 11 Allen, 268, 272. In providing the rate of taxation, it expressly compares the subject of the tax with "other moneyed capital." The same expression occurs, in the same connection, in the acts of congress, and shows conclusively that what was intended to be permitted by the one and imposed by the other, was a tax on property and not a duty or excise upon the franchise of either stockholder or corporation. Without the consent of congress it would not be competent for a state to lay an excise upon the enjoyment of a franchise granted by the United States; and such consent cannot be presumed or implied.

A tax is proportional, within the meaning of the Constitution, only when it bears the same ratio to the whole sum raised by taxation as the taxpayer's estate bears to the whole taxable estate of the Commonwealth. *Oliver* v. *Washington Mills*, 11 Allen, 268, 275. *Commonwealth* v. *People's Savings Bank*, 5 Allen, 428, 431. *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255. "This rule of proportion," in the language of this court, is

"based on the obvious and just principle that the benefit which each person derives from the government has direct relation to the amount of property which he possesses and enjoys under its sanction and protection." 11 Allen, 275. But, under this statute, such proportion is wholly destroyed, by the express provision that the shares of nonresidents shall be omitted from the valuation. This want of proportion vitiates the tax.

In the taxation of the other moneyed capital in the state, even of the shares of resident stockholders of the national banks, the moneyed capital and shares make part of the valuation upon which the tax is to be assessed. Just in the degree that they increase and enlarge this valuation, the sum to be raised being a fixed sum, to that degree they lessen the rate or percentage of taxation. See St. 1865, *c.* 242. In the taxation of the nonresident stockholder under the St. of 1868, *c.* 349, his shares are excluded from the valuation by the direction of the statute, § 5, and he pays a rate upon a valuation from which his own and all other shares of nonresidents are omitted. Of course he pays a greater rate. For illustration, J. S. is a resident in a certain town. He owns one hundred thousand dollars of the stock of a national bank in that town. The other taxable property is nineteen hundred thousand dollars. The whole amount of tax to be raised is twenty thousand dollars. As the bank stock of J. S. is to be included in the valuation, the amount of the valuation will be two millions, and he will pay one twentieth of the tax. But he moves over the state line, and his stock must be excluded from the valuation, and the sum to be raised, twenty thousand dollars, is assessed upon the valuation of nineteen hundred thousand dollars, and thus a rate ascertained for taxing his omitted stock. Each hundred thousand dollars pays one nineteenth part of the sum to be raised, and his stock a sum equal to the nineteenth part. That is to say, he, as resident stockholder, pays a twentieth part of twenty thousand dollars; as nonresident, a nineteenth part.

It does not meet the difficulty, to say that the nonresident stockholder pays no higher rate on his shares than the citizens of the town where the bank is located. The legislature cannot

lay a heavier tax upon the shares of the nonresident by prescrib-
ing a different mode of valuation and assessment in the town
where his bank is located than in other towns of the state.    If
his shares are estate within the Commonwealth which ought
to bear part of the public burdens, and are therefore subjected
to a tax which is equal to the state, county and municipal taxes,
there is no just reason why they should not make part of the
valuation, and contribute, like other moneyed capital or shares
of residents, to lessen the rate of taxation.

If the tax thus laid by the St. of 1868, *c.* 349, on the shares
of nonresident stockholders of the national banks is not propor-
tional; and if, by reason of the mode of assessment directed by
the statute, the rate of the tax laid on them is made greater than
that laid upon other moneyed capital in the state; it exceeds and
conflicts with the limitation prescribed in the two acts of con-
gress.    It is not sufficient that the tax laid by the state does not
exceed the tax laid upon bank shares or other moneyed capital
in the hands of citizens of any town or city where a bank hap-
pens to be located which has stockholders residing out of the
state.    The acts of congress require it to be no greater than that
assessed on other moneyed capital in the hands of individual
citizens of the state.    The language of the act of 1864 is, " but
not at a greater rate than is assessed upon other moneyed capi-
tal in the hands of individual citizens of said state."    The act
of 1868 adds, before the word "other," the word "any," and
reads "any other moneyed capital."    If congress was looking to
the contingency that different rates might be fixed by the state
upon different kinds of moneyed capital, it would seem that the
tax laid by the state upon the bank shares could not exceed the
lowest of such rates; that congress did not intend to subject the
shares of the banks to the highest rate of taxation any state
might see fit to fix upon any form of moneyed capital in the
state, for such a tax might be laid for the purpose of advancing
the tax upon the stock of the national banks.    But it is suffi-
cient to say that the state, under the limitations prescribed by
congress, cannot establish a mode of assessment and taxation,
for any portion of the shares, which works out a higher rate of

taxation than that prescribed for other moneyed capital; and that, under the St. of 1868, *c.* 349, the nonresident shareholder pays a higher rate than is paid by the residents of any city or town in which there either is no national bank, or one not having the same amount or value of its stock in the hands of nonresidents. That the residents of the same city or town where the nonresident shareholder is taxed pay the same enhanced rate that he does, is immaterial.

Under the provisions of § 6 of the St. of 1868, *c.* 349, the money collected passes into the town or city treasury. The provision for setting off the "amounts due and payable by any city or town to the state under this act, against amounts due from the state to such town or city," would seem to be conclusive on this point.

Further, the St. of 1868, *c.* 349, is retrospective in its operation. It taxes the nonresident owners of stock, not merely for the shares of which they were owners when the law took effect, but for the shares sold and transferred before the existence of the law. It, in fact, assumes to assess a tax upon one person, and creates a lien for its payment upon property of another. See §§ 2, 7. Though such a law may not strictly impair the obligation of the contract, it is not, under our Constitution, a reasonable law, or a reasonable tax. See *Oliver* v. *Washington Mills,* 11 Allen, 268, 277, 279; *Commonwealth* v. *Provident Institution for Savings,* 12 Allen, 313.

Finally, the reasoning of the court in *Oliver* v. *Washington Mills,* 11 Allen, 280, 281, is equally applicable to the cases at bar, and shows that this statute is in conflict with that clause of the Constitution of the United States, which provides that " citizens of each state shall be entitled to all privileges and immunities of citizens of the several states." See also *Corfield* v. *Coryell,* 4 Wash. C. C. 380, 381; *Crandall* v. *State,* 10 Conn. 343; *Campbell* v. *Morris,* 3 Har. & McHen. 535, 554.

*C. Allen,* Attorney General, & *C. H. Hill,* for the defendants.

AMES, J. By the terms of the act of congress of June 30 1864, (U. S. St. 1864, *c.* 106,) under which the national banks nave come into existence, all the shares in each of said banks

are made taxable in the place in which the bank is "located," without any regard whatever to the legal domicil of the shareholders respectively. This provision forms a part of the organic law under which every such bank has its being, and under which the stockholders contribute to its capital. This court has recently decided that the word "place," as used in the statute, means the state within which the bank is located. *Austin* v. *Aldermen of Boston,* 14 Allen, 359. And the subsequent amendatory act of congress of February 10, 1868, (U. S. St. 1868, *c.* 7,) uses the following language : " The words ' place where the bank is located and not elsewhere ' shall be construed and held to mean the state within which the bank is located ; and the legislature of each state may determine and direct the manner and place of taxing all the shares of national banks located within said state, subject to the restriction that the taxation shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of such state; and provided always that the shares of any national bank owned by nonresidents of any state shall be taxed in the city or town where said bank is located, and not elsewhere." The legislature of this Commonwealth, by the St. of 1868, *c.* 349, passed June 11th of that year, entitled "An act concerning the taxing of bank shares," has undertaken to determine and direct the manner in which all the shares of stock in banks, whether of issue or not, existing by authority of the United States, shall be taxed. The act provides, among other things, that such shares owned by nonresidents of this Commonwealth shall be assessed to the owners thereof in the cities or towns where such banks are located, and not elsewhere; that the tax shall be a lien on their shares; that the value of such shares shall be omitted from the valuation upon which the rate is to be based; and that the proceeds of the tax on such shares, when collected, shall be paid over by the treasurer of the town or city to the state treasurer. The plaintiffs insist that this statute, so far as it applies to nonresident stockholders, is one which the legislature had no right to enact; that the tax assessed under it upon such stockholders is invalid ; and that the lien it assumes to create upon the stock cannot be enforced.

The counsel for the plaintiffs insists that three " landmarks " have been established in this broad field of inquiry, namely, tha the shares of the stockholders of the national banks are distinct subjects of taxation ; that they may be assessed and taxed without deducting from their valuation that portion of the corporate capital invested in the bonds of the United States ; and last, and most important of all for the purposes of this inquiry, that, the banks being agencies of the general government in the execution of its powers and functions, the states have no power to tax their capital except under the permission of congress. It is also established by statute that the shares are taxable in the place (that is to say, the state) where the bank is located, and not elsewhere; that the legislature of each state may determine and direct the manner and place within such state of taxing such shares (with a restriction against oppressive and hostile taxation) ; and that, in the case of shares belonging to persons not residing within the state, the place of taxation shall be the city or town in which the bank is located, and not elsewhere. A citizen of Connecticut or Rhode Island, therefore, owning shares in a national bank in Massachusetts, is not to be taxed for them in Connecticut or Rhode Island. They can only be taxed in Massachusetts: a provision which relieves him of all danger of being twice taxed for the same property. *Flint* v. *Aldermen of Boston,* 99 Mass. 141. The acts of congress in regard to such shares belonging to nonresident stockholders apparently are intended to annul, as to them, the general rule that personal property follows the person, and has no locality other than the domicil of the owner: and to attach to such shares, for some purposes, and to some extent, the local character and fixity of real estate. They are proper subjects of taxation in the town where the bank in question is located; and the legislature of the Commonwealth (as the above quoted act of congress expressly provides that it may) has, by the statute in question, determined and directed the manner in which they shall be taxed.

If the St. of 1868, *c.* 349, is to be interpreted as providing for the imposition of an excise, in the proper sense of that term and as distinguished from a tax, it would be liable to all the

objections so fully pointed out in the recent case of *Oliver* v. *Washington Mills,* 11 Allen, 268, and could not be sustained. But the plaintiffs do not claim that it was intended to provide for an excise, in the proper sense of that term. On the contrary, they insist that it is intended to authorize a tax, and not an excise; that the act bears the title of " An act concerning the taxation of bank shares " ; that " tax," and in no case " duty " or " excise," is the term used throughout the statute; that the provisions for the assessment and collection are appropriate to a tax rather than to a duty or excise, and are assimilated to the existing provisions of law for the assessment and collection of taxes on similar property; that the rate of taxation is required to be the same as on other moneyed capital; that the same form of expression is used in the statute and in the acts of congress above cited, showing that a tax on property, and not a duty or excise on the franchise, was intended to be permitted by congress and imposed by the state; and that the statute has not been so framed that it could be held valid either as tax or an excise, whichever its true nature might be. On the assumption, then, that this argument on the part of the plaintiffs is well founded, and that the true construction of the statute is, that it is intended for taxation, and not for an excise or duty, can it be maintained as a valid exercise of power on the part of the legislature ?

The objection that it conflicts with the restrictions expressly provided for by the two acts of congress is one which meets us at the threshold of the inquiry, and may very properly be considered first. The power of the state to tax the shares is subject to the restriction that the tax shall not be " at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of the state." We think that this clause was obviously intended to preclude the possibility that property of that description should be singled out for special and peculiar taxation. Its operation would be, to prevent oppressive and hostile discriminations unfavorable to the banks. A state, if there were no such restrictions, might so arrange its method of taxation as substantially to expel the national banks from its

limits. It must be assumed that this system of banking was devised by the national legislature for national purposes, as an agency of the government in the exercise of its powers and functions, and that for public reasons it was intended that it should be general and uniform throughout the country. It might well eem reasonable to congress to take some precaution that the banks in each state should be taxed only at the same rate, and generally in the same manner, as the moneyed capital of individual citizens is taxed in the same state. The language of the act of congress does not require the strict, literal and narrow interpretation that might be proper in the construction of a penal statute. It means, merely, as we think, that such shares shall be taxed upon a general system and in compliance with a set of rules and principles applied alike throughout the state to the taxation of all moneyed capital. It means, that the rate' upon a thousand dollars, invested in such a bank, shall be the same as the rate upon a like sum put out at interest on good security; that, as far as mere taxation is concerned, the owner of the one investment shall fare neither better nor worse than the ascertained owner of the other; that banks are not to be oppressed or incommoded, nor their operations as agencies of the general government to be prevented or impeded by invidious and unfavorable rates, as compared with other property of the same general kind in the same place. A strictly literal construction of the clause would lead to such results that practically it would be a matter of almost insuperable difficulty to lay any legal tax at all upon that form of investment. If the words mean that the rate is to be the lowest that is assessed upon any moneyed capital in any part of the Commonwealth, one result would be, that the owners of bank stock would be assessed, in Boston for example, at less than the rate of taxation on other moneyed capital, or other property generally, owned by other residents of the same city. It may be assumed that generally the taxation in large cities will be at a higher rate than in rural and small farming towns. There would not only be one rate on bank stock, and another and higher rate on other property but the assessors of Boston, before fixing upon the rate for bank

stock, must inform themselves what is the lowest rate of taxation on moneyed capital in any one of the very many municipal bodies into which this state is subdivided. When they have obtained that information, on this construction of the act of congress, they will have ascertained the maximum rate proper to be observed in the taxation of bank stock. Then suppose that Boston, on its being ascertained that the tax on money capital in some small town in the county of Berkshire, or in the county of Franklin, has been fixed at five cents on the hundred dollars of valuation, should adopt that same rate for the taxation of bank stock; and suppose it should happen that the assessors of the city of Worcester, for example, in order to be certain not to endanger the validity of their tax by adopting too high a rate, should take the precaution to fix their rate upon bank stock at four cents and nine mills on the hundred dollars, is the Boston tax to be thereby rendered illegal and void for being in conflict with the restriction contained in the act of congress of February 10, 1868? Why not, if the lowest rate on any moneyed capital is the only legal rate?

Is the tax on bank stock throughout the Commonwealth to be determined, and absolutely controlled, by the decision of some small country village, in which there happens to be no bank, and in which the municipal wants and expenses are slight and insignificant? Yet the literal construction of the words " at a rate no greater than is assessed upon *any* other moneyed capital in the hands of individual citizens of the state " would lead to precisely this result. It is impossible to believe that such was the purpose of the act, or that such would be a reasonable and fair interpretation of its meaning. In our judgment, it satisfies the meaning of the restriction, if the rate upon bank shares is the same as the rate upon moneyed capital in the hands of individual citizens in the town or city where the bank is located.

Another objection, which is the one principally urged in the argument, is, that the tax in controversy is not proportional. If this objection should prove to be well taken, the tax is illegal and void. It is not in the power of congress to authorize the

legislature to adopt a system which fails in so important and vital a particular. But in what way does this alleged want of fair proportion manifest itself, and in what does it consist? If we compare the case of the nonresident stockholder with that of those resident in the town where the bank is established, we find that they pay at exactly the same rate on their shares. If we compare his case with that of individuals, citizens of the same place, owning other moneyed capital, we find that they also pay at the same rate on their respective valuations. Suppose it to be true that they all pay at a higher rate than would be charged if the shares belonging to nonresidents were included in the valuations, yet, as they all pay at one uniform rate, there is no disproportion as among themselves. The rate in one town may be very different from the rate in the adjoining town; but it is not necessary, in order to meet the requirement that taxes shall be proportional, that the rate shall be identical in all the very great number of municipal corporations throughout the state. Each town determines for itself what amount of expenditure its wants require, or its valuation and local circumstances will justify; and of course the rates differ very widely in different places, yet they have never been called in question as not being proportional, on account of discrepancies of that nature. We do not understand that there is any complaint that one set or class of stockholders, in banks, is taxed on a different system from the rest; or that there is any want of due proportion among the stockholders, as compared with each other or with other individuals owning moneyed capital. The proportion, on which we understand the plaintiffs to insist as the only constitutional and legal basis on which taxes can be assessed, is that which the whole amount to be raised by taxation under the description of state, county, and municipal taxes, bears to the entire amount of all the property taxable within the Commonwealth. How stands the case in view of this objection?

If our St. of 1868, *c.* 349, had simply provided that the tax on bank shares belonging to persons not residing within the state should be paid into the treasury of the town or city where the bank is, and should make a part of the funds of such town

or city ; in other words, if such shares were included in the valuation, and taxed as the real estate of nonresident owners is taxed; the case would present no difficulty, or rather the case would not have arisen. But the statute requires that the value of such shares shall be omitted from the valuation upon which the rate is to be based ; and also that the taxes upon such shares, though paid in the first instance to the treasurer of the town or city where the bank is, shall be accounted for by him to the state treasurer and appropriated to the use of the Commonwealth. The effect of the statute, then, will be, that the whole amount of the state, county and town taxes (so far as they affect property and not polls) is levied upon the whole amount of all taxable property in the state, except only the shares of nonresident stockholders in the national banks established within the state. That is to say, the whole of the property tax, falling within that classification, is imposed upon only a part of the taxable property of the Commonwealth ; a large part undoubtedly, but confessedly only a part. The plaintiffs claim that the rate of taxation is higher and the tax larger, to each individual taxpayer, than they would be if literally the whole of the taxable property were charged with the whole of the tax.

As we understand the argument in behalf of the plaintiffs, it may be illustrated in this manner: Suppose the whole amount of the property, which, by the terms of the statute, is to be omitted from the general valuation forming the basis of taxation, to be sufficiently large for its omission to diminish that valuation to such an extent that, in order to raise the whole amount of the taxes, it should become necessary to increase the rate of taxation from four cents on each hundred dollars to five cents. Of course these figures are here taken arbitrarily, merely for the purpose of illustration, and without any attempt to approximate to the exact state of the facts. Assuming these figures, we should have the taxes upon property included in the valuation apparently twenty-five per cent. higher than they would be under a system requiring the whole of the taxable property to pay the whole of the property tax. This same rate, made by the operation of the statute, as the plaintiffs insist, to stand at

twenty-five per cent. above the true constitutional ratio and its true and legal proportions, is then imposed by the statute upon the shares belonging to nonresident owners. And the plaintiffs insist that, whatever may be the state of things among the stockholders as compared with each other, the rate and the amount both are not in that ratio to the taxable property which alone is recognized by the Constitution as the true and just proportion.

It is quite apparent that this objection, if well founded, is very far from being peculiarly applicable to the case of nonresident owners of bank stock. If the fact that the whole amount of the property taxes is levied upon less than the whole amount of the taxable property is a valid objection, it is sufficient to vitiate the whole tax. The owners of bank stock, moneyed capital, or in fact of any other description of taxable property included in the valuation, would apparently have as much reason to complain of the disproportion, as the nonresident owners of bank stock. If the principle of assessment should prove to be erroneous and vicious, and prohibited by the terms of the Constitution, the tax is all wrong, from beginning to end, and cannot be enforced against owners of bank stock, whether resident or not resident in the state, nor in fact against any owners of property whatever.

It is true that, under the operation of the statute, a part only of the taxable property of the Commonwealth is made to pay the whole of the county tax, the city and town tax, and also the whole amount of what is annually voted by the legislature specifically as the state tax, so far as these three descriptions of tax are assessed upon property and not upon polls. The money obtained from the assessment of bank stock belonging to nonresident owners does not make any part of either one of these three descriptions of tax. But, although not known as the state tax *eo nomine*, it is nevertheless a tax for the use and benefit of the state. It goes into the public treasury, and makes a part of the annual ways and means of the state. The effect of the statute, if carried out, would be to furnish the Commonwealth with a regular source of income capable of making a valuable addition to the public revenue, varying perhaps somewhat from year to

year, but not subject to any violent or sudden fluctuations, and generally admitting of a reasonably close estimate in advance. We are bound judicially to know the fact that the large amounts annually appropriated by the legislature for the payment of the expenses of the Commonwealth are mainly supplied by the imposition of the state tax. We are bound also to assume that, in determining the amount of that state tax, the legislature takes into consideration all the sources of income, from any quarter, which the state has at its command, including among them the tax provided for by this statute; and that the general state tax annually voted is intended to cover deficiencies of revenue, and to provide the necessary ways and means for the varying exigencies of the public service. The acts of congress have made certain property taxable here, which without these acts might not be so taxable. They have also permitted the legislature to determine and direct the manner of such taxation. This it has undertaken to do by a statute which provides that this new taxation shall be so managed as to inure wholly to the benefit of the state treasury, and not be applied to merely local and municipal purposes. The statute assumes that, to the stockholder not residing within the state, the appropriation of such a tax is a matter of no interest or importance. It does not concern him, so long as the amount is ascertained on the same principles and the tax is assessed at the same rate as it would be if he resided in the city or town where the bank is established.

We do not understand the plaintiffs to deny that their shares are proper subjects of taxation in Boston, or to complain that there is any disproportion in the taxation of resident and non-resident shareholders in the same place, as compared with each other. The objection is, that by the operation of the statute they are made taxable at a higher rate, and so for a larger amount, than they would be if they were included in the valuation upon which the rate is to depend. Is this complaint well founded? It is to be remembered that whatever amount may be added to the public revenue by the operation of the statute diminishes to exactly the same extent the amount necessary to

be raised by the state tax, properly and technically so called. The annual resolve for the assessment of a state tax is what in parliamentary language is usually called a " deficiency bill." Suppose that, after considering all sources of income other than taxation, the legislature should find that the sum of twelve hundred thousand dollars is needed to cover the public expenditures of the state; and that the tax on bank shares belonging to non-residents, and provided for in the terms of the statute, would produce the sum of two hundred thousand dollars annually. And here it may be repeated, that these figures are assumed arbitrarily, and merely as illustrative of the argument. Upon these figures, a tax of one million of dollars would supply the deficiency. But, if the statute were to be repealed or pronounced unconstitutional and void, and the law so far changed that the bank shares belonging to nonresidents should be included in the municipal valuations, and taxed as other property of the same kind is taxed, the state would lose from its annual revenue the sum of two hundred thousand dollars. The valuations which form the basis of taxation would be increased by the addition of property producing two hundred thousand dollars in taxes annually. The county and municipal taxes, not being increased, would be assessed upon a larger amount, and of course at a lower rate; but the state tax, on the other hand, would be raised from one million to twelve hundred thousand dollars. The general result would be, that the taxpayers would pay exactly what they did before, with not the slightest change of rate or proportion. In either mode of taxation, the taxable property would pay into the treasury of the state exactly the same sum, namely, twelve hundred thousand dollars. The nonresident stockholders, as a class, do not appear, then, to have any cause to complain that the tax upon them as such, under our statute, is not proportional; and we find nothing in the agreed facts that distinguishes these plaintiffs from other nonresident owners generally.

There is a provision in the statute, that, in assessing such shares, there shall be a deduction of a proportionate part of the value of the real estate belonging to the bank. To that

extent the nonresident stockholder is privileged and favored, as there seems to be no law requiring or permitting any such allowance in favor of stockholders residing in the state. This disproportion was not alluded to in the argument; and no importance, as we suppose, was intended to be attached to it. It certainly is not one of which these plaintiffs can reasonably complain.

The conclusion, then, at which we arrive, is, that the St. of 1868, *c.* 349, does not transcend, or conflict with, the limitations expressly set forth in the acts of congress; that practically it produces no appreciable disproportion among taxpayers as compared with each other; that the omission of the shares of nonresidents from the town valuations produces no actual want of due proportion, for the reason that the general result of the taxation, supposing the statute to be held valid, is substantially identical, to each taxpayer, with what it would be if the shares of nonresidents were included in those valuations and taxed in the same manner in all respects as the real estate of nonresident owners is taxed; and that, although in one mode of proceeding the sum total of the valuations is less than in the other, yet the aggregate of the amount to be raised under the heads of county, municipal and state taxes is diminished in exactly the same proportion.

As to the objection that it is retrospective in its operation, it seems to be enough to say that, under the acts of congress, the property was certainly taxable in such lawful manner as the legislature of the Commonwealth should direct. Whoever, then, on the first day of May 1868 held such property knew, or was bound to know, that it was taxable like other moneyed capital as of that day, in such manner as by law might be provided.

We do not find, in the various objections taken on behalf of the plaintiffs, and so ably and forcibly urged by their learned counsel, anything that convinces us that the statute ought to be pronounced unconstitutional, or that the tax imposed in pursuance of it is unlawful and void. And according to the terms of the agreement there must be, in each case,

*Judgment for the defendant.*