THE PEOPLE, PLAINTIFFS IN ERROR, v. C. W. MOORE,
DEFENDANT IN ERROR.

NATIONAL BANK ACT—STATE—TERRITORY.—The word "state," wherever
used by congress in the currency act of 1864, or in the amendments
thereto, should be construed to mean "territory" as well, wherever the
same is applicable.

NATIONAL BANK SHARES—TAXATION.—When congress enacted the currency
act of 1864, it intended to permit the shares in national banks, in the
hands of individuals or corporations, to be taxed, wherever such associa-
tions might be organized, whether in states or territories.

IDEM.—Congress did not intend, by the first proviso of the forty-first section
of the national currency act of 1864, to require uniform taxation in all
the different municipalities of a state or territory, but only that the same
should be uniform in the municipality or subdivision in which the bank
is located, or in which the shareholder resides.

LEGISLATIVE AUTHORITY—TAXATION.—Congress has sufficiently authorized
the legislature of this territory to pass a law requiring the taxation of
national bank shares in the hands of individuals or corporations.

CONSTRUCTION—PLACE OF TAXATION.—The limitation as to the place of taxa-
tion of bank shares, contained in the national currency act of 1864, and
in the act of 1868, amendatory thereof, requiring the assessment to be
made "at the place where the bank is located, and not elsewhere," must
be construed to mean the state within which the bank is located.

REVENUE LAW—TAXATION—BANK SHARES.—The revenue law in force in
1871, did not authorize the assessment or taxation of shares of national
bank stock in the hands of individuals or corporations.

ERROR to the district court of the second judicial district
of Ada county, to review a judgment rendered against the
plaintiffs upon sustaining a demurrer to the complaint, on
the ground that said complaint does not state facts sufficient
to constitute a cause of action.

*F. E. Ensign and A. Heed,* for the plaintiffs in error:

Has the territory a right to levy taxes upon the shares of
stock of national banks owned and held within its limits?
Such shares are personal property belonging to the indi-
vidual. (*People* v. *The Commissioners,* 4 Wall. 256.) The
shares of stock are taxable, not the capital. (*Van Allen* v.
*The Assessors,* 3 Id. 573; 9 Id. 468.) Without any special
grant of power the states or territories have a right to tax
all property within their jurisdiction belonging to the citi-
zen. (1 Dill. C. C. 314; 12 Wall. 423; 9 Id. 587; 4 Wheat.

437–439.) The statute of the territory is in strict conformity to the act of congress. (9 Wall. 470.) Under our statute all property, whether real or personal, is taxed at a uniform rate. (3 Am. Rep. 407; 101 Mass. 575.) A party can not complain of his assessment, if his property is taxable, on the grounds that others are not assessed, or that their property is exempt. (1 Dill. C. C. 539; 9 Wall. 470.)

*R. Z. Johnson,* for the defendant in error:

The judgment of the court below should be affirmed, for that: 1. A territory has no authority to impose taxation upon national bank shares.

And, first, these banks are, as constitutional agencies of the federal government, exempt from such taxation. (*Pittsburg* v. *First National Bank,* 55 Pa. St. 48; *Van Allen* v. *The Assessors,* 3 Wall. 589; *Veazie Bank* v. *Fenno,* 8 Id. 548; *McCulloch* v. *Maryland,* 4 Wheat. 429; *Bank of Commerce* v. *New York City,* 2 Bl. 634; *Osborn* v. *United States Bank,* 9 Wheat. 863; *Weston* v. *The City of Charleston,* 2 Pet. 449; 12 Stats. at Large, p. 710, sec. 1; 13 Id., p. 425, sec. 2; 12 Id., p. 346, sec. 2; Id., p. 546; 13 Id., p. 218, sec. 1; Id., p. 306, sec. 18; *Bank of Commerce* v. *New York City,* 2 Bl. 628; *Bank Tax Cases,* 2 Wall. 200; *Brown* v. *Maryland,* 12 Wheat. 448; *Crandall* v. *Nevada,* 6. Wall. 48; *Dobbins* v. *Erie County,* 16 Pet. 447; Currency act of June 3, 1864.) If the territories may impose this tax it must be by virtue of an express grant of the power from congress. (*City of Pittsburg* v. *First National Bank,* 55 Pa. St. 50; *Van Allen* v. *The Assessors,* 3 Wall. 595; *National State Bank of Oskaloosa* v. *Young,* 25 Iowa, 313.) The provisos of the forty-first section of the national bank act are not a grant of any power to tax these national bank shares. First office of proviso. (*United States* v. *Dickson,* 15 Pet. 165; *Mines* v. *United States,* Id. 445; *Voorhees* v. *Bank of United States,* 10 Id. 471; Sedgwick on Stat. & Con. Law, 62, note; *Rice* v. *Keokuk,* 15 Iowa, 583; *Matter of Webb,* 24 How. Pr. 247.)

And second, congress can not confer the right of taxation upon the states of the union. (*McCullough* v. *Maryland,* 4 Wheat. 425; *Gibbons* v. *Ogden,* 9 Id. 198; *Brown* v. *Mary-*

*land*, 12 Id. 448; *Dobbins* v. *The Com. of Erie County*, 16 Pet. 447; *Nathan* v. *Louisiana*, 8 How. (U. S.) 82; *Lane County* v. *Oregon*, 7 Wall. 77; *The Collector* v. *Day*, 11 Id. 123; *Ward* v. *Maryland*, 12 Id. 428; *Van Allen* v. *The Assessors*, 3 Id. 585; *The State* v. *First Nat. Bk.*, 4 Nev. 355; *Benner* v. *Porter*, 9 How. (U. S.) 242. The provisos of the forty-first section are to be strictly construed, and they do not extend to the territories. (1 Kent's Com. 385; *United States* v. *Dickson*, 15 Pet. 165; *Van Allen* v. *The Assessors*, 3 Wall. 587; Nat. Bk. Act, secs. 6, 9, 30, 40, etc., throughout the act; *Allen* v. *Pegram*, 16 Iowa, 167; 4 Whart. 422; Ang. & Ames on Corp., sec. 15; Bouv. Law Dict., title Municipal Corporations; *Queen* v. *Com. of Poor Laws*, 6 Ad. & El. 68; Smith's Com. Stat. Law, sec. 489; *Brown's Lessee* v. *Blougher*, 14 Pet. 198; Amendments of Bk. Act, 1; Act March 3, 1865; 13 Stat. 498; Act February 10, 1868; Act July 12, 1870; 1 Kent Com. 348; *Hepburn* v. *Elbz'y*, 2 Cranch, 445; *New Orleans* v. *Winter*, 1 Wheat. 91; *Barney* v. *Baltimore*, 6 Wall. 287; *Scott* v. *Jones*, 5 How. (U. S.) 377; *Messenger* v. *Mason*, 10 Wall. 507.)

2. The legislature of this territory had not attempted, at the time of this assessment, to exercise this authority; and the imposition of the taxes in question here was not authorized by law. (*County Treasurer* v. *Webb*, 11 Minn. 503; Ang. & Ames on Corp., secs. 458, 560, 561; 23 Iowa, 149, 450; *Bradley* v. *The People*, 4 Wall. 459; *Hubbard* v. *The Supervisors*, 23 Iowa, 147; *The People* v. *The Assessors of Boston*, 44 Barb. 148, 158; *National Bank* v. *Commonwealth*, 9 Wall. 359; *Van Allen* v. *The Assessors*, 3 Id. 581.)

NOGGLE, C. J., delivered the opinion. WHITSON and HOLLISTER, JJ., concurred.

This action is brought by the district attorney against the defendant, to collect taxes on personal property. The defendant appeared and filed a demurrer to the plaintiff's complaint; that demurrer was sustained by the district court; from that decision, sustaining the defendant's demurrer, the plaintiff has appealed to this court. The proceedings in this court seem to be for the purpose of determining the

question, whether the shares of stock in the National Bank, in the hands of the defendant, were properly assessed in 1871; whether such assessment was authorized by the laws of congress and of this territory. The court will dispose of the three questions argued:

1. Does the law of congress, known as the national currency act of 1864, and its amendments, give the power of taxation to the territories? or has congress by any law prior to the date of the assessment in 1871, extended to Idaho territory the power of taxation? By section 6 of the organic act for this territory it is among other things provided: "That the legislative power of the territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and with the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents." This law of congress was in force, and this territory had been organized and was in operation, long before the currency law was enacted by congress. It was then a territory, possessing the inherent power of taxation, a government that could only be sustained by taxation.

We must therefore conclude that when congress used the word state, in the currency act of 1864, or in the amendments thereto, they also meant territory wherever that term is applicable. This conclusion is arrived at after a careful review of the authorities quoted by the counsel on both sides of the case; from the case of *McCulloch* v. *Maryland,* 4 Wheat. 429, to *Ward* v. *Maryland,* 12 Wall. 428. From all these authorities, as well as from the very interesting arguments of counsel on both sides, we feel confident that when congress enacted the currency law of 1864, it intended to permit the shares in these national associations in the hands of individuals or corporations, to be taxed, wherever such associations might be organized, whether in states or territories.

We will next dispose of the last point, and will consider the second point last.

The last point argued is by far the least important point in the case, and the court is now unanimous in the opinion that Congress did not intend that taxation should be uniform in all the different municipalities of states or territories; that all that is meant in the first proviso of the forty-first section of the national currency act of 1864, by requiring that the shares in these national associations might be taxed where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens, etc., could only have reference to the taxes of the municipality or county in which the bank was located or the shareholder resided.

It is true that in the case of *Providence Institution for Savings and Jewell* v. *City of Boston,* 101 Mass. 575, and also in the third volume of American Reports, 407, this question is discussed in such a manner that it is well calculated to deceive and give a wrong impression. The case sustains the law as we understand it; sustains the legality of the tax in Massachusetts by affirming the judgment sustaining the tax. In doing so, however, great labor is expended in reasoning down the objections to the law that some localities in the state might assess a greater tax than other localities in the same state. We think that congress did not attempt to exempt the shares of national banks owned by or in the hands of individuals or corporations from municipal taxation; all that congress did require was that wherever taxed, whether for state, territorial, county, school, town, or city purposes, such shares should not be assessed at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of such state.

In the opinion of the court congress has sufficiently authorized Idaho territory to pass a law, requiring the taxation of national bank shares in the hands of individuals or corporations. The limitation mentioned in the first proviso of the forty-first section of the national currency law of 1864, when construed in connection with the act amending the same law approved February, 1868, in relation to taxing shares in

national banks, and when congress say that "nothing in this act" (meaning the currency act of 1864, aforesaid) "shall be construed to prevent all the shares in any of said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment of taxes, by or under state authority, at the place where such bank is located, and not elsewhere, but not, at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," and by said amending act declare that the place where the bank is located, and not elsewhere, in section 41 of the act to provide a national currency, approved June 3, 1864, shall be construed and held to mean, the state within which the bank is located; also in providing that stockholders who did not reside within the state, that their shares shall be taxed in the city or town where said bank is located, and not elsewhere; showing plainly, we think, that in requiring uniformity, congress had reference only to the state, territory, county, town, or city, wherever the shareholder might reside, in the state or territory where the bank is located, that if the bank should be located in a city, the state or territorial and the county and city assessment should not be at a greater rate in the state or territory, county and city, than is assessed in the same state or territory, county and city, on other moneyed capital in the hands of individual citizens of that city or county, provided, that such shareholder resided in the state where the bank was located.

Congress did not intend that the tax on shares of stock held by a resident of Owyhee or Boise county, should pay just the same taxes that the shareholder in Ada county pays. All that the currency act and its amendment require is that the assessment shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of said county or other municipality, where such shareholder may reside, in the state where such bank is located. When congress conferred upon the legislature of Idaho territory the power over all rightful subjects of legislation, congress knew as well then as now that even the

territorial government must be carried on in part by taxing the property within the territory; that the territorial government they had established required the organization of counties, towns, and cities, whose governments must be sustained by a tax upon the property within them; and also knowing that the wants, necessities, and expenses of these different municipalities could not be uniform, congress could have had no intention to require that such municipal taxation should be uniform throughout the territory or the state.

We will now consider the point passed over, which we regard as the decisive point in this case, and which is the last point necessary to be considered by the court, and that is, does the revenue act of Idaho territory, that was in force when these taxes were assessed, authorize the assessor to assess the shares of national bank stock in the hands of individuals or bodies corporate in name? We think not. We also think that the territorial taxation of those shares, under the legislation of congress, is lawful whenever the legislature pass such laws as authorize the territory to do so. (*Van Allen* v. *The Assessor*, 3 Wall. 573.)

Congress organized the system of national banks, and in the absence of express inhibition, possessed the right to surround that system with all the necessary safeguards to protect such banks and their shareholders in future; and if congress sees fit, as it has done, to regulate the taxing power of the states over these institutions, that exercise is not to be questioned; because, by the terms of the federal constitution, "the laws of the United States shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." The national currency act of 1864 provides that nothing contained in that act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of said person or corporation in the assessment of taxes, imposed by or under state authority, at the place where such bank is located, and not elsewhere; but not at

a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state. This must be regarded as the regulation of a taxing power that existed in the states, and by the law of congress in the territory of Idaho, prior to the currency law of June, 1864. If said provisions of said forty-first section of the national currency act aforesaid are mere regulations of the taxing power, then the local law must conform to the law of congress upon that subject.

For the purpose of ascertaining the authority given to tax the shares in question, as provided by congress, we must first examine our organic act, and the laws enacted by our legislature under that act.

Section 6 of the organic act for Idaho territory provides, among other things, as before stated: "That the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the constitution of the United States, and provisions of this act; but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands and property of residents." These are the only inhibitions in the organic act that in any way reach the legislative power upon the question of taxation. This is virtually leaving all other power of taxation, not prohibited by the organic act, with the territorial legislature.

From all these various laws, from time to time passed by congress, we think there is no doubt it was the intention to confer upon the territorial legislature the power to tax the shares in the hands of individuals or bodies corporate of national banks; but we think the tax imposed must be upon the shares in name, and that it is unsafe to attempt to tax them in any other manner. *Eo nomine et numero.*

As to the last proviso, in the forty-first section of the national currency law, it is sufficient to say, there is no other bank in the territory excepting the first national bank of Idaho, at Boise city; therefore, no unfair discrimination is possible between this bank and any other bank in the

territory. We are of the opinion, that the laws of Congress authorize legislation in this territory for the purpose of taxing the shares of national banks, in the hands of individuals and bodies corporate.

We will now examine the statutes of Idaho and see if our revenue laws furnish sufficient authority for assessing the shares in the hands of the defendant. The last part of section 5 of the revenue law then in force, chapter 1, on page 20 of the fifth session laws, is the law relied upon by the counsel against the demurrer and in support of the tax. That part of the section relied upon reads as follows, viz.: "All capital loaned, invested, or employed in any trade, commerce, or business whatever; the capital stock of all corporations, companies, associations, firms, or individuals doing business or having an office in the territory; the money, property, and effects of every kind, except real estate, of all banks, banking institutions or firms, bankers, money-lenders, and brokers," may be assessed.

Section 1 provides an annual *ad valorem* tax of eighty cents upon each one hundred dollars value of taxable property for territorial purposes; and the same section 4, said revenue act, provides, that upon the same property the board of commissioners from each county is also hereby authorized and empowered to levy and collect, annually, a tax for county expenditures, not exceeding one hundred and fifty cents on each one hundred dollars; and upon the same property a further special tax may be levied to meet purposes under the laws of this territory.

The revenue law contains six hundred and eighty-nine sections; but that part of section 5 above set out, comes nearer authorizing the assessment and taxation of shares of stock in the hands of individuals than any other portion of the revenue law. We are unable to say, after examining these laws, with as much care as possible, under all the circumstances, that there is any law in Idaho territory that authorizes the assessment or taxation of national bank shares where the bank is located in the territory.

It will probably not be denied that personal property of the nature of bank shares ordinarily follows the *situs* of the

owner, that it is usually situated where the owner resides. We think that under the ordinary rule, this description of property, in the absence of statutory provision, would be deemed to be situated where the owner resided. Congress, however, in the forty-first section of the national currency law of June, 1864, did assign to the shares in these national associations a *situs* for the purpose of taxation. That *situs* of the shares in said national associations, by the act construing said section, approved February 10, 1868, is fixed within the state where the bank is located, and in the case before us, within the territory of Idaho. And by the proviso of the amending act aforesaid, it is provided: "That the shares of any national bank owned by non-residents of any state in the city or town where said bank is located, and not elsewhere." We think the territorial legislation does not sufficiently conform to the laws of congress, and that the defendant's demurrer should be sustained.

We think this point raised by the demurrer, and lastly considered by the court, is well taken, and for that reason the judgment of the district court is affirmed.