LINTON, tax-collector, *v.* CHILDS.

The words of an act which imposes a tax on the presidents "of each of the banks of the State," include the presidents of all banks doing business in the State. Such an act, however, is inoperative when sought to be applied to the presidents of national banking associations organized under the acts of Congress, because such associations are instrumentalities created by Congress and designed to aid in the administration of an important branch of the public service. The business of such an association, not being subject to be taxed by the laws of a State, and the president being an officer prescribed by the act of Congress, through whom, in part, the business of the association must be carried on, a tax on the president, as such, would tend to retard and burden the operation of the law which provides for the creation and maintenance of such institutions.

Argued June 14, and November 24, 1898.— Decided February 10, 1899

Injunction. Before Judge Hutchins. Clarke superior court. April 23, 1898.

This was a petition for an injunction to prevent the sale of property levied on as the property of the petitioner, under executions issued against him by the tax-collector of Clarke county, one for $10, " amount of State capitation tax as president of bank, due for the year 1891," and the others for the same tax for ensuing years.    The petitioner alleged that the executions were issued by authority of the general tax act passed in 1891 and re-enacted for each of the subsequent years, which provided for a specific tax of ten dollars to be levied upon " presidents of each of the banks of the State," but that the bank of which he was president, the National Bank of Athens, was in no sense a bank of the State, but was chartered by an act of Congress, and was or could be used by the government of the United States for its fiscal operations; that the president of the bank was an officer indispensable to its operation as a bank, and the tax sought to be collected was intended as a license, and intended to be levied on the bank itself; which is expressly prohibited by the act of Congress authorizing the creation of national banks.    No answer to the petition was filed, but it was insisted by the tax-collector that, under the facts alleged, the petitioner was liable for the tax. The court granted an injunction as prayed, holding that the tax sought to be collected was a tax on a national bank, and in the nature of a license; that a national bank is or might be fiscal agent of the Federal government, and as such, no license-tax can be legally collected of it or its president by the State.    To this judgment the tax-collector excepted.

*J. M. Terrell, attorney-general,* and *C. H. Brand, solicitor-general,* for plaintiff in error.    *John J. Strickland,* contra.

LITTLE, J.    The payment of the tax sought to be collected was resisted by the president of a national bank, for two reasons: 1st, that the legislature, by the use of the words which imposed the tax, did not intend to include presidents of national banks; 2d, that if the legislature, by the words used, meant to impose a tax on presidents of national banks, the act was inoperative and void, because the State has no power to limit or obstruct the business of national banks, which are agencies of the Federal government, and the imposition of a tax by the State on the pres-

ident of a national bank would so operate. If either of these contentions be true, the tax sought to be collected from the defendant in error would be illegal. It is axiomatic that the power which seeks to collect a tax must show clear authority to do so. In this case the authority shown is that of the State, a power sovereign in its character, and, unless forbidden by its own constitution, or unless it is an interference with an institution created by the Federal government, called into existence for the benefit of the people at large, such power manifestly exists. The words of the act impose a tax of ten dollars on the president " of each of the banks of the State." Judicial cognizance will be taken of the fact that there are two classes of banks which are located, operated, and doing business in the State, which have presidents; to wit, banks organized under the laws of this State, and banking associations created under the laws of the United States, which are private associations authorized by Congress for the joint purposes of convenience and profit to the holders of United States bonds, and of furnishing the public with a convenient and uniform circulating medium. 16 Am. & Eng. Enc. Law, 144, citing 3 Wall. 573; 56 Me. 274; 121 U. S. 138; 18 Am. & Eng. Corp. Cases, 92; 99 Mass. 141.

There can be no question that the words employed in this act which impose the tax are broad enough to cover the presidents of such banks as have been organized under the laws of this State, because such are certainly banks of the State. Such institutions not only do business in the State, are protected by the authority of the State, have access to the courts of the State, but are created by its laws, and their business is regulated by legislative enactments of the State; but it is not to be held that, while organized under the laws of the general government, national banking associations are foreign corporations, nor, in their capacity as persons, are aliens; on the contrary, such associations are established and located, under the law of their creation, at a certain given locality in one of the States or other political divisions of the United States, and such place or point is distinctly named in the certificate of organization (1 National Bank Cas. 161; 6 Bliss, 26) ; and for jurisdictional purposes, they are to be treated as citizens of the State within which they

are located.    Such associations are not otherwise citizens of the
United States.    2 Abb. (U. S.) 232;  8 Blatch. (U. S.) 137;
6 Peters, 761.    Indeed, the business of a national banking asso-
ciation must be done at this designated location, and it can not
lawfully do business, such as cashing checks drawn upon it, else-
where.    38 Fed. Rep. 883.    So that, equally with State banks,
national banks are citizens of the State in which they are lo-
cated, in the sense that corporations are citizens;  and this result
follows from the act which creates such associations.

The able counsel for the defendant in error, who furnished us.
with a concise and comprehensive brief on the points involved,
refers to the language employed in the paragraph of the act of
the General Assembly where a tax is imposed on the " president
of each of the railroad companies, president of each of the ex-
press, telegraph, telephone, electric light and gas companies do-
ing business in this State."    He argues from such language,.
used in the same paragraph which imposes a tax on the presidents.
of banks, that if the legislature had intended to impose a tax on
presidents of national banks, it would have used the words
" president of each bank doing business in this State."    Such
words are of course more comprehensive in their nature, but are
they needed to include presidents of national banks?    If, as we
have seen, such banks are to be treated as citizens of the State in
which they are located, then there are no banks doing business in
Georgia which can properly be denominated foreign corpora-.
tions.    While not domestic corporations, the act which creates
national banking associations establishes for them one situs, one
domicil;  and while they operate under laws independent of the
State, it is only for the purpose of carrying out the objects of
their organization within the State in which they are located.
It is a matter of common knowledge that in Georgia there are
railroad, telegraph, telephone, express and gas companies doing
business which are not citizens, but foreign corporations.    The
domicil of such corporations is in another State;  they are here
merely by the comity which exists between the States.    There
might be some question if the act which sought to include such
corporations should impose a tax on " the presidents of the rail-
roads of this State," because, while they do business in this

State, they are citizens of other States, and carry on business here simply by permission. Judge Cooley, referring to the construction of tax laws, says: "The underlying principle of all construction is, that the intent of the legislature should be sought in the words employed to express it, and that when found it should be made to govern, not only in all proceedings which are had under the law, but in all judicial controversies which bring those proceedings under review." Cooley, Taxation, 2d ed., 264. We can not doubt that the General Assembly, by the use of the words quoted, intended to impose a tax on the presidents of national banks as well as State banks.

The inquiry then arises, whether the General Assembly has power to impose a tax on the presidents of national banks doing business in this State. "Taxes are the enforced proportional contributions from persons and property, levied by the State by virtue of its sovereignty for the support of government, and for all public needs." Cooley, Taxation, 1. And further, as to the subjects of taxation, the same eminent authority declares: "Every thing to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right." Id. 5. The tax in question is, by the statute, imposed on the presidents of each of the banks of the State. The section of the act which imposes the tax lays it also upon "every practitioner of law, medicine or dentistry, agents negotiating loans," etc.; from which it is evident that it is imposed as an occupation tax. As a rule there can be no question of the right of the General Assembly to impose a tax on the occupation of persons. Sometimes it is called a license fee, and is imposed in the exercise of the police power of the State, and used for regulating certain businesses; or it may be imposed directly as a tax to raise revenue for the support of the government. McCay, J., delivering the opinion of this court, in the case of *Burch* v. *Mayor etc. of Savannah,* 42 *Ga.* 596, says: "We can see no reason, in the nature of things, why a tax may not be laid upon the land and upon the crop, on the horse and on the work of the horse, on the man and on the income of the man; unless there be some special limitation of this power by the constitution." Under our constitution

the only qualification pertaining to the levy of taxes on occupations is, that while the taxing power may not tax all classes of occupations, yet when one class is taxed, all in that class must be taxed alike, in order to secure the uniformity required by the constitution. *Mayor etc. of Athens* v. *Long,* 54 *Ga.* 330; *Cutliff* v. *Mayor etc. of Albany,* 60 *Ga.* 597. So that, assuming it was the purpose of the General Assembly to include presidents of all banks doing business in this State, in the imposition of the tax, the question is, do the laws of the United States so limit the power of the General Assembly to tax national banking associations as to exclude presidents of national banking associations from the operation of a statute which imposes an occupation tax on such officers? It is not necessary to refer to the method of organizing national banking associations. Their creation, powers and duties are the subjects of United States statutes accessible to all. Without doing so, it is sufficient to say, that such banks, when duly organized, are "instruments designed to be used to aid the government in the administration of an important branch of the public service. . . Being such means, brought into existence for this purpose and intended to be so employed, the States can exercise no control over them, nor in anywise affect their operation, except in so far as Congress may see proper to permit." Farmers & Mechanics Bank *v.* Dearing, 91 U. S. 29. In a leading decision of the Supreme Court of the United States, which has never been modified so far as the principle we are discussing is concerned, it is said by the court, that the States have no power, by taxation or otherwise, to retard, impede, burden or in any manner control the operation of a constitutional law enacted by Congress to carry into execution the powers vested in the general government. McCullough *v.* Maryland, 4 Wheat. 316; see also, 9 Wheat. 738; 2 Wall. 200; 4 Wall. 459; 10 Wall. 490; 2 Black, 620. In direct harmony with this principle, as to the correctness of which there can be no doubt, this court, in the case of *Mayor etc. of Macon* v. *First National Bank of Macon,* 59 *Ga.* 648, ruled that, "Whilst the property owned by the bank may be taxed by State authority, and the shares owned by the stockholders may be also taxed, the business of the bank—its right to operate and do banking

business—can not be taxed by the States. . . The distinction between the right to tax property and that to tax business in cases of agencies working under Federal authority is well settled, we think," etc. Again, in the case of *Johnston* v. *Mayor etc. of Macon*, 62 *Ga.* 650, in discussing the right of the City of Macon to tax the business of State and national banks, this court, in reference to the latter, said, " it could not tax the business of the national bank, because it was chartered by Congress, and the government of the United States used its business for their fiscal operations, or could use it, and any interference by State taxation might, if allowed at all, amount to prohibition—by making the tax so high as to be prohibitory."

Considering then the propositions that a State can not, by taxation or other legislation, impair or destroy the efficiency of the operation of any Federal agency created by a constitutional act of Congress to further and serve the purposes of the government of the United States, and that national banking associations are one of such agencies whose business can not be taxed by the State as fully established, it may be well to inquire into the nature of the tax imposed. It was urged by the attorney-general that the tax contemplated by the statute was imposed in the exercise of the police power of the State, that such tax is a personal one, and that the bank president is not relieved because of the fact that the bank is a Federal agency; and he cites Traders' National Bank *v.* Chipman, 164 U. S. 347. We are of the opinion that the imposition of this tax was not made in the exercise of the police power which, in the opinion of some authors, is founded on the law of necessity, and which is defined by Blackstone to be the due regulation and domestic order of the kingdom, whereby individuals, like members of a well-regulated and well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners. 4 Bla. Comm. 162. It extends to the protection of lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State. 27 Vt. 149. While it is true that revenue may be raised by an act passed in the legitimate exercise of the police power, it is our opinion that, in so far as the act in question is concerned, it is a pure revenue law,

enacted to procure, in part, funds for the support of the government, passed in the legitimate exercise of the taxing power of the State, and that it applies in all cases where the particular subject is not, by some controlling law, exempt. Nor do we think the case cited supports the contention of the plaintiff in error, but the reasoning in that case leads logically to a conclusion in harmony with decisions we have previously cited. In reference to national banking associations the court, in the case cited, says: "As long since settled, in cases already referred to, the purpose and object of Congress in enacting the national bank law was to leave such banks, as to their contracts in general, under the operation of the State law, and thereby invest them, as Federal agencies, with local strength, whilst at the same time preserving them from undue interference, whenever Congress, within the limits of its constitutional authority, has expressly so directed, or wherever such State interference frustrates the lawful purpose of Congress, or impairs the efficiency of the banks to discharge the duties imposed upon them by the law of the United States." By the provisions of section 5145 of the Revised Statutes of the United States the affairs of national banking associations must be managed by directors chosen by the stockholders; and by section 5150 of the same revision, one of the directors, to be chosen by the board, shall be president of the board. So far as direct authority is concerned, the president of a national bank, or rather of its board of directors, is only authorized, in terms, to preside at the meetings of the board of directors, and to have charge of the litigation of the bank; otherwise his power as given by the acts of Congress is the same as that of any other director. See 1 Morse, Banks, §§ 143-144; 7 Ala. 281. Under the act of Congress, the business of a national bank is to be managed, controlled and carried on by the board of directors. A member of this board is the president. Without such officers the corporation could not carry on business. In other words, the directors, including the president, are the instruments designated by the act of Congress to carry on the business of the banking association, which is itself one of the instruments called into being for the purpose of performing a part in the business of the government. Now if the business

of the bank can not lawfully be taxed, nor any tax imposed by a
State which would frustrate the lawful purpose of the act of
Congress, or which would impair the efficiency of the bank to
discharge the duties imposed upon it by law, then it would seem
to follow, that a tax on the directors, or a director, or the presi-
dent, through whom alone such business could be carried on,
would be equally obnoxious.    If a State could lawfully impose a
license or occupation tax on a director, or the president who is a
director, it is a tax on the instrumentality or agency declared by
Congress to be the only power through whom the business of the
bank could be carried on.    Without these officers no national
bank could transact the business for which it was organized.    If
the State can not tax the business of the bank because it is a nec-
essary creation by the general government for its own use, by
what process of reasoning can the right be claimed to tax the in-
struments which alone can lawfully carry on such business, not
as individuals, but as *officers of the bank?*    The tax here is laid,
not upon the individual as an individual, but upon him as an
officer of a bank.    If such a tax could be lawfully laid, it might
be laid to an amount which might deter some, if not all, of such
officers within the State from performing the duties devolving
upon them; and if any should be prevented or deterred by such
tax from performing the duties contemplated by the act of Con-
gress, necessarily the business of the bank would be retarded,—
nay, might be destroyed.

It will be noted that the tax imposed is not one upon the prop-
erty, real or personal, of the president, nor upon his income, but
clearly a tax upon his vocation or calling.    In Railroad Co. *v.*
Peniston, 18 Wall. 5, the Supreme Court of the United States
laid down the general rule, that " the exemption of agencies of
the Federal government from taxation by the States is depend-
ent, not upon the nature of the agents, nor upon the mode of
their constitution, nor upon the fact that they are agents, but
upon the effect of the tax; that is, upon the question whether
the tax does in truth deprive them of power to serve the govern-
ment as they were intended to serve it, or hinder the efficient ex-
ercise of their power.    A tax upon their *property* merely, hav-
ing no such necessary effect, and leaving them free to discharge

the duties they have undertaken to perform, may be rightfully laid by the States. A tax upon their *operations,* being a direct obstruction to the exercise of Federal powers, may not be." The agency there in question was a railroad company chartered by act of Congress, and it was held that the property owned by it was subject to taxation, but that no tax could lawfully be imposed upon the franchises or right of the company to exist and perform the functions for which it was brought into being. In Allen's Appeal, 119 Pa. St. 192, it appears that a statute of Pennsylvania provided " it shall be a misdemeanor for the cashier of any bank of this commonwealth to engage in any other profession, occupation or calling." In construing this statute the court held it was not intended to apply to national banks, for the reason that " the power of Congress to create a complete system for the government of national banks being conceded, a disqualification may not be imposed upon an officer of such institution by any act of the State legislature, where none has been imposed by the act of Congress." In the opinion Mr. Justice Paxson calls attention to the fact that if a State be at liberty to impose one qualification upon officers of national banks, it may likewise impose others, until the business be most seriously embarrassed or rendered entirely impracticable. Certainly, the efficiency of such institutions might be impaired by such a State law. This, as we have seen, can not be done.

Our conclusion, therefore, is that the act of the General Assembly which imposes a tax on the presidents of each of the banks of the State is inoperative when sought to be applied to the presidents of national banks doing business in this State, because the ultimate effect of the imposition of such a tax tends to impair the efficiency of such national banks, of which they are presidents, to discharge the duties imposed upon them by the laws of the United States.

*Judgment affirmed. All the Justices concurring.*