A. J. TOWER COMPANY *vs.* COMMONWEALTH.

Suffolk.   November 5, 1915. — March 7, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Tax,* Excise on corporate franchise, On shares in national banks. *Corporation,* Excise on franchise of domestic business corporations. *Bank. National Bank.*

Under St. 1909, c. 490, Part III, §§ 11, 20, 41, 43, the tax commissioner, in determining the amount of the franchise tax to be levied upon a domestic business corporation owning shares of stock in national banks, should treat such shares under § 43 as "securities which if owned by a natural person resi-

dent in this Commonwealth would be liable to taxation," and should refuse to make deductions of the value of these shares under § 41 as "securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation;" such shares being none the less liable to taxation because the taxes upon them are required by the statute to be paid by each bank after being assessed to the owner of the shares in the city or town where such bank is located, and the bank being given a lien on the shares for the payment of such taxes.

The rule for determining the amount of the franchise tax to be levied on domestic business corporations, which is stated above, does not violate U. S. Rev. Sts. § 5219.

Our tax law makes no discrimination in favor of shareholders of trust companies as against shareholders of national banks.

A difference in the method of taxing shares of stock in national banks and shares in other moneyed corporations does not amount to discrimination under U. S. Rev. Sts. § 5219, where it does not appear that this difference results in imposing a greater burden on national banks than upon other moneyed capital.

In deciding the points stated above it was assumed, without deciding it, that the payment of the property tax upon the shares of national bank stock owned by the plaintiff, a domestic business corporation, was valid.

RUGG, C. J.  This suit in equity * is brought to test the validity of the excise tax laid upon the plaintiff's franchise as a corporation.  The material facts are that the plaintiff, a domestic business corporation, owned shares in national banks doing business in Boston, which were assessed to the plaintiff and the tax thereon paid by the respective banks in accordance with the assumed requirements of the general tax act.  St. 1909, c. 490, Part III, §§ 11-20.  The validity of that assessment is not before us.  In determining the amount of the franchise tax to be levied on the plaintiff, the tax commissioner treated these shares of national bank stock as "securities which if owned by a natural person resident in this Commonwealth would be liable to taxation," Part III, § 43 of the tax act, and refused to make deductions of them as "securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation," under § 41 of the same part.

This method was in accordance with the tax law.  Shares of stock in a national bank, if owned by a natural person resident in the Commonwealth, are made subject to taxation.  It is provided by Part III, § 11, that "All the shares of stock in banks . . . existing by authority of the United States or of the Commonwealth,

---

* The case was reserved by *Braley,* J., for determination by the full court.

and located within the Commonwealth, shall be assessed to the owner thereof in the city or town in which such bank is located." By the two following sections, the bank is required to pay the tax and is given a lien upon the shares for such payment. This tax is levied by authority of U. S. Rev. Sts. § 5219.

The tax thus assessed upon the shares of stock in national banks is not a tax upon the banks, but upon the shareholders. That is the plain language of the statute. The tax is assessed to the owners of the shares. Although the bank is required to pay the tax, it makes that payment not in its own right, but as agent for the shareholder. This follows, also, from the provision that the bank is given a lien on the shares for the payment of the tax. It hardly could be given a lien for its own tax. Impliedly it has a right of action if necessary to recover the amount so paid. So are the decisions. *National Bank of Commerce* v. *New Bedford,* 155 Mass. 313, 316. *Van Allen* v. *Assessors,* 3 Wall. 573, 584. *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 518. *Eliot National Bank* v. *Gill,* 134 C. C. A. 358. See *Corry* v. *Mayor & City Council of Baltimore,* 196 U. S. 466, 472.

The contention that natural persons, when owners, are liable only to assessment and not to taxation, is untenable. The assessment confessedly is made to the owner. But the tax is clearly paid on his account and by the bank as his special agent for that purpose. *Tappan* v. *Merchants' National Bank,* 19 Wall. 490. The indubitable conclusion is that shares of stock in national banks, when owned by a natural person resident in the Commonwealth, are liable to taxation.

It is urged that the Legislature otherwise has manifested an intention that such stock should not be included in the assets upon which the corporation franchise tax is computed. Reliance is placed on that part of § 17 which provides that "No bank, the shares in which are liable to taxation by section eleven, shall be liable thereto under the provisions of section forty-three, nor shall the shareholders be liable to taxation for their shares therein for any purpose, except under the provisions of this part." The words "this part" in this connection are not fairly referable to the sections dealing with the taxation of bank shares, but mean Part III of the tax act, which relates to "Taxation of Corporations." It is used manifestly in contrast to "Part I" and the other divi-

sions of the act called parts. Section 17 has no bearing upon the present issue. Its effect is to exempt banks whose shares are taxed under § 11 from a franchise excise under § 43, and to provide that the shareholders shall not be subjected to a property tax other than that established by § 11. The plaintiff is not taxed for a property tax on the shares save under § 11. Moreover, the exception at the end of the section evidently contemplates the possibility that they may be considered in determining the corporation excise tax of the owner of shares.

The express provision of § 18, to the effect that, in collecting the excise upon the franchises of savings banks and of insurance companies, certain deductions are to be made of the amounts paid as property tax upon shares of stock in national banks owned by savings banks or insurance companies, is strong argument that no such deduction was intended as to other corporations.

The most formidable argument against this interpretation is that in a certain limited way it results in the consideration, for the purpose of fixing the excise tax, of property which already has been subjected to taxation. That affords no constitutional objection to the validity of an excise tax statute. The tax levied upon the plaintiff, in determining the amount of which these shares were considered, is strictly an excise and not a property tax. It is an excise upon the privilege or commodity or franchise of existing and doing business as a corporation. *Baltic Mining Co.* v. *Commonwealth*, 207 Mass. 381, *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35, both affirmed in 231 U. S. 68. It is no objection to the validity of such an excise that, in measuring its amount, consideration is given to property which could not be taxed, such as government bonds, *Commonwealth* v. *Hamilton Co.* 12 Allen, 298, affirmed in *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632, real estate and personal property located in another State and there taxed, *American Glue Co.* v. *Commonwealth*, 195 Mass. 528, imported merchandise in bond, *Farr Alpaca Co.* v. *Commonwealth*, 212 Mass. 156, or corporate stocks taxed in another jurisdiction, *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51. As was said in *Flint* v. *Stone Tracy Co.* 220 U. S. 107, at page 163, "The distinction lies between the attempt to tax the property as such and to measure a legitimate tax upon the privileges involved in the use of such property." Such taxation is not double taxation

in a constitutional sense. Doubtless every reasonable presumption is to be made against even this kind of *quasi* double taxation. If the instant statute involved a general scheme of such taxation, perhaps other considerations would arise. See *Oliver* v. *Washington Mills,* 11 Allen, 268, 279; *Loring* v. *Beverly,* 222 Mass. 331. But it does not evince a broad design to that end. It happens that in this comparatively narrow class of cases, probably not involving large numbers of persons or considerable amounts of property, there is an appearance of double taxation. Of course, if constitutional rights were involved, they would be protected. But no scheme of tax laws can be absolutely equal or work exact justice in every application. Approximation to that end is all that can be expected. Instances of a kindred kind of double taxation have been upheld. *Salem Iron Factory Co.* v. *Danvers,* 10 Mass. 514, as expounded in *Worcester* v. *Board of Appeal,* 184 Mass. 460.

The circumstance, that the tax commissioner heretofore has not included shares of national bank stock in computing the franchise excise on corporations, is no reason why he should not now include it if the statute requires it. The terms of the legislative mandate must be followed. There is no room for the application of contemporaneous construction of doubtful statutes, as in *Burrage* v. *County of Bristol,* 210 Mass. 299.

The measure of the corporation excise tax of the plaintiff does not violate U. S. Rev. Sts. § 5219.* The differences between the calculation of the franchise excise of savings banks and of trust companies on the one side and the direct tax upon shares of na-

---

* That statute is as follows: "Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

tional bank stock is of no consequence. The words of the federal statute "do not embrace any moneyed capital . . . except that in the hands of individual citizens. This excludes moneyed capital in the hands of corporations, although the business of some corporations may be such as to make the shares therein belonging to individuals moneyed capital in their hands." *Mercantile Bank* v. *New York*, 121 U. S. 138, 156.

The validity of our statute relating to the taxation of shares of stock in national banks, when in substantially the same form as now, was upheld in *Providence Institution for Savings* v. *Boston*, 101 Mass. 575, affirmed in *Bank of Redemption* v. *Boston*, 125 U. S. 60, 69.

Our tax law makes no discrimination in favor of the shareholders of trust companies, as against shareholders of national banks. The franchise excise upon the plaintiff, not being a tax upon property, is not taxation upon its shares of national bank stock, and hence its effect cannot be discriminatory as to taxation.

The general scheme of raising revenue by an excise upon the franchise value of domestic corporations and not taxing the shares of such corporations in the hands of their owners, is not a discrimination against the shareholders of national banks. That scheme of taxation is an endeavor to carry out the general policy of this Commonwealth of avoiding double taxation. It accomplishes that result by levying a direct property tax upon all the real and some of the tangible personal property of a corporation, and then levying an excise upon the value of the franchise as shown by deducting the value of its physical property, directly taxed as property, from the fair cash value of all the shares constituting its capital stock and imposing upon that franchise value an excise tax measured by the average rate of property taxation throughout the Commonwealth for a period of three years. This is the practical equivalent of a property tax. It would be unjust then to levy a tax on the shares of stock in the hands of their owners, for the whole property represented by such shares has once been taxed at its full value. Hence the law forbids any further taxing of such shares. Plainly, this is a reasonable and just exemption and in no sense discriminatory.

But, if it be assumed that there must be a closer comparison between the tax ultimately resting upon the stockholders in trust

companies and upon the stockholders of national banks, there is no discrimination against the latter. The tax upon shares of national bank stock is upon their fair cash value after deducting the proportionate part of the value of the real estate belonging to the bank at the rate prevailing in the city or town where the bank is located. § 11. The value of the franchise of a trust company for excise tax purposes is determined by estimating the fair cash value of all its shares after making deductions which as to trust companies could ordinarily mean only real estate. § 41. The method of ascertaining value is thus the same as to both. The rate is slightly different, that upon the shares of national bank stock being the local rate, while that of trust companies is the average rate for the Commonwealth. This variation is not discrimination. Very likely the rate upon trust companies in Boston was in excess of that upon shares of stock of national banks in Boston. There are other factors which show that there is no discrimination against national banks. But this is enough to show that our statute is not open to successful attack in this regard.

A difference in the method of taxing shares of stock in national banks and in other moneyed corporations does not amount necessarily to discrimination under U. S. Rev. Sts. § 5219. It must appear that this difference results in imposing a greater burden on national banks than upon other moneyed capital. *Covington* v. *First National Bank of Covington,* 198 U. S. 100, 114. Disregarding the difference in form between the two methods of taxation and looking only to the ultimate burden, as we have seen, there is no violation of the federal statute. *First National Bank of Garnett* v. *Ayers,* 160 U. S. 660.

This case has been considered and decided, as it was argued, upon the assumption that the payment of the property tax upon the shares of national bank stock owned by the plaintiff was valid, but without so deciding. That question is not affected by what has been said. See *Worcester* v. *Board of Appeal,* 184 Mass. 460.

*Petition dismissed with costs.*

*S. F. Johnson & J. W. Farley,* for the plaintiff.

*W. H. Hitchcock,* Assistant Attorney General, for the Commonwealth.